# F. M. Lowe, Petitioner, v. A. J. Summers, Respondent.

## Kansas City Court of Appeals, March 11, 1897.

1. Courts of Appeal: JURISDICTION: HABEAS CORPUS. Under the constitution courts of appeal have the right to issue *habeas corpus* and the statute relating to *habeas corpus* intrusts such jurisdiction to some court of record or to any judge thereof in vacation and the judge of a court of appeals may grant such writ in vacation of the court.

2. ———: ———: ———: CONTEMPT OF GENERAL ASSEMBLY. The court of appeals, or judge thereof in vacation, has jurisdiction to issue *habeas corpus* where the person is not charged with a crime or misdemeanor but with contempt of the general assembly.

3. General Assembly: POWER TO PUNISH FOR CONTEMPT: COMMON LAW: AMERICAN LAW. A general power to punish for contempts resided with legislative bodies of England from time immemorial, and in America it is a common law principle that the legislature can not only punish its own members for contempt but persons who commit disorder in its presence or who ignore or treat with contempt its lawful process, such as an obstinate and refusing witness before one of its committees.

4. ———: ———: DISTRIBUTION OF POWERS. The constitutional distribution of powers in three distinct departments—legislative, executive and judicial—does not have the effect to deprive the general assembly of its common law power to punish for contempt, as the exercise of such power does not come under the head of the power properly belonging to the judicial power but is incident to and inherent in the legislative department.

5. ———: ———: CONSTITUTIONAL LIMITATION. Section 17, article 4, of the constitution limiting the amount of the fine and imprisonment for contempts in the presence of the general assembly does not serve to restrict the power of that body to punish for contempts committed out of its presence, such as the refusal of a witness to testify before one of its committees, since said section does not create a power but serves only to fix and limit the amount of punishment in a specific case.

6. ———: ———: CONFLICTING DUTY OF PUBLIC OFFICER.    A prosecuting attorney summoned before a legislative committee can not defend his refusal to testify or his neglect to attend when summoned before the legislative body to show cause why he should not be punished for contempt, by showing that the duties of his office rendered it impossible or his attendance would be damaging to the public service.   He should submit the causes of his delinquency for their adjudication, and ignoring the order to appear before the house renders him guilty of a second contempt.

7. ———: ———: AFFIDAVIT CHARGING CONTEMPT.    No affidavit charging contempt need be filed before the house of representatives to authorize said body to issue its warrant to arrest a contumacious witness who refuses to testify before one of its committees.   The written report of such committee is sufficient authority to justify the issue of such warrant.

## *Original Proceeding by Habeas Corpus.*

PRISONER REMANDED.

*Thomas George* and *Frank P. Sebree* for petitioner.

(1)   The house of representatives of the general assembly of Missouri has no jurisdiction or power to punish a witness for refusal to testify before one of its committees.   To arrest and punish for contempt is the highest exercise of judicial power.   *In re Mason*, 43 Fed. Rep. 510.   And all the authorities are to the same effect.   *In re Sims*, 54 Kan. 1.   And the judicial power in the state of Missouri is specially vested in the courts by the constitution in two separate articles. *Greenough v. Greenough*, 11 Pa. St. 489; *Turner v. Althaus*, 6 Neb. 54; *State v. Sloss*, 25 Mo. 291; *State ex rel. v. Adams*, 44 Mo. 570, 587; 1 Bryce's American Commonwealth, p. 229;   *Landenberg v. Decker*, 131 Ind. 471; *State ex rel. v. Noble*, 118 Ind. 350; Potter's Dwarris, 492; *State ex rel. v. Maynord*, 14 Ill. 419; *Lane v. Dorman*, 3 Scam. 237.   (2) House can exercise only such judicial powers as are expressly given it by the constitution.   Constitution, sec. 17, art. 4;

Cooley's Constitutional Limitations [6 Ed.], 78, 79. Power to punish for contempt is confined to delegated authority. *People v. Webb*, 5 N. Y. Supp. 855; s. c., 23 St. Rep. 324; *State ex rel. v. Fisher*, 119 Mo. 344, 351; *Page v. Allen*, 58 Pa. St. 338; Sutherland Stat. Constructions, sec. 327; quoted and adopted by Sup. Ct. Mo., in *State ex rel. v. Woodson*, 128 Mo. *loc. cit.* 514; *State v. Schuchmann*, 133 Mo. 117. (3) The act of petitioner was not in the "presence" of the house, nor was such act "disrespect to the house by any disorderly or contemptuous behavior." No greater violence could be done to language than to say that an act at Kansas City was in the presence of the house at Jefferson City, one hundred and fifty miles away. See *Ex parte O'Brien*, 127 Mo. 477, as to in the presence of court. Sec. 17, art. 4 of the constitution; R. S. 1889, sec. 3261. Thus it is seen that neither by the statute nor the constitution is there any power in the house to punish a witness for contumacy in refusing to testify before a committee, and if there were such a statute it would be contrary to the constitution and void. (4) The attorney general has cited three authorities to sustain his position that there is in each house of legislative bodies the inherent power to punish for contempt. But neither of them sustain his position when the limitations of our constitution are considered. The case of *Kilbourn v. Thompson*, 103 U. S. 168, though not relied on by the attorney general, is the foremost case in the country on the question. It was expressly held that the houses of congress do not possess the inherent power to punish for contempt, which is possessed by the houses of the British parliament. The case is such an important one and so fully discusses the questions in hand that we refrain from making extracts from it, but ask the court to read it, and the English cases therein cited, especially 4 Moore, P. C. 63; 11 Moore,

P. C. 347, and 1 Low, Rep. P. C. 328. See, also, *In re Kerrigan*, 33 N. J. Law, 344; *Rhinehart v. Lance*, 43 N. J. Law, 311. (5) The possible necessity for such power is no ground for a construction which does violence to the spirit of the constitution. (6) The investigation and questions must be to obtain information to frame legislation, and relevant and pertinent. *People ex rel. v. Keeler*, 99 N. Y. 463. (7) The attorney general fearing that he can not sustain the right of the house to punish petitioner for contempt for refusal to answer the questions of the committee when sitting one hundred and fifty miles away from the house, now brings into the controversy the failure of petitioner to obey the summons and go to Jefferson City to abide the action of the house on the question of the punishment, and claims that this act was a contempt authorizing the issue of the warrant. But this contention is without any merit whatever. (8) The rule is that before a warrant can be issued for a constructive contempt there must be an affidavit filed charging the contempt. 4 Encyclopedia Pleading and Practice, 779 and notes; *State v. Heuthorn*, 46 Kan. 613; *State v. Vincent*, 46 Kan. 618; *Hawthorne v. State*, 45 Neb. 871; Rap. on Contempt, sec. 93, *et seq.* And this rule is in harmony with section 11 of article 2 of the constitution. (9) One department of government can not stop the wheels of another for a supposed unimportant offense. The petitioner is prosecuting attorney and an officer of the criminal court of Jackson county. To take him from his duties stops the machinery of said court. If he can be taken for a day, he can be taken at the pleasure of the house until it adjourns. This would seem to be against public policy, and an unwarranted interference by one department of government with the affairs of another.

*Edward C. Crow*, attorney general, for respondent.

(1)   Powers of judges in chambers are usually regulated by statutes. The general rule is that judicial matters must be transacted in court; that business transacted out of court is exceptional and must find authority in the statutes. 4 Ency. Plead. and Prac., p. 337; *Loomis v. Anderson*, 49 Cal. 241; *Prosser v. Prosser*, 64 Iowa, 380. Revised Statutes, 1889, section 5346, provides that application for such a writ may be made to some court of record in term, or to any judge thereof in vacation. The constitution, section 12, article 6, confers no authority on the judges of the court of appeals to issue writs of *habeas corpus;* the constitutional authority is conferred on the court and not on the judges. Therefore, the judges out of court in the absence of statutory authority, acting merely as judges, can not exercise the power incidental to *habeas corpus* proceedings. Constitution of Missouri, sec. 12, art. 6; *R. R. v. Dunlap*, 47 Mich. 457. On a common law principle it might be held that one of the judges of the court of appeals might have the authority to entertain a petition for writ of *habeas corpus* in vacation, but the return thereof should be made to the court in term time. The right to hear and determine the same is vested in the court, unless it appears by constitutional or statutory provisions that the matter may be considered by one of the judges in chambers. 3 Chitty's Gen. Practice, p. 24. Article 6, section 12, conferring jurisdiction on this court to issue remedial writs states in express terms said court shall have power to issue, etc. It is observed that such authority is limited by the constitution to the court. (2) R. S. 1889, secs. 5412, 5414. There is no other or different provision for

the exercise of the powers of this court in issuance of this writ than applies in general to all courts of record and judges thereof in this state. These two sections show that all the provisions of this chapter on *habeas corpus* are made applicable to every writ issued by any court of record, or judge thereof, in this state. Section 5414 is confined to persons held in custody on charge of crime or misdemeanor. Contempt is a specific criminal offense, and a judgment of contempt is regarded as a judgment in a criminal case. *Fischer v. Hays*, 6 Fed. Rep. 68; *New Orleans v. Steamship Co.*, 20 Wall. p. 387; *Williamson* case, 67 American Decisions, 382; 12 Am. Dec. 186; 74 Am. Dec. 681. In construing these two sections, 5412, 5414, Revised Statutes, 1889, a few familiar rules of statutory construction may enlighten us. *First*, the purpose of interpretation is to arrive at the intent of the lawmaker. 54 Mo. App. 315. All the words of a statute should have effect rather than any part should perish by construction. 110 Mo. 254. If by the language of a statute a thing is limited to be done in a particular form or manner, it precludes a negative that it should be done otherwise. 46 Mo. App. 360. The consequences of a proposed interpretation may be considered in determining the probable intention in the enactment of the law. 112 Mo. 34; 64 Mo. 206; *State ex rel. v. Field*, 112 Mo. 554; *State ex rel. v. Murphy*, 33 S. W. Rep. 36; *State v. Cline*, 23 S. W. Rep. 693; *State ex rel. v. Elkinson*, 30 S. W. Rep. 33. (3) The power to punish for contempt is necessary to the existence of a legislative body. It is as necessary to a legislative body as is the right of self-defense to an individual. 12 Am. Dec. 182. (4) All legislative bodies are inherently clothed with full power to punish for contempt, both their members and other persons while acting in the proper discharge of their constitutional functions. *Brenham v. Morrison*, 14

Gray, 240; *People ex rel. v. Keeler*, 99 N. Y. 463; *Falvey v. Massing*, 7 Wis. 640. The constitution of Missouri recognizes this right. Sec. 17, art. 4. The authority is also provided for by legislative enactment. Secs. 6655, 6656, 6659, R. S. 1889. This fact distinguishes the case under consideration from the case of *Kilbourn*, 103 U. S. 168. (5) All legislative bodies possess the power to protect their deliberations and proceedings from interruption. A committee is a part of the legislative body, and a contempt of the committee or a contempt committed before a committee, is a contempt of the body appointing the committee. The two houses of congress possess the power to punish for contempt, the limitation being that a witness can not be punished for contempt unless his testimony is required in a matter in which congress has jurisdiction to inquire into. The two houses of English parliament and the legislatures of the several states possess the unrestricted right to punish for contempt so long as said house of parliament or the legislatures of the several states, or committees thereof, are acting within their constitutional function as to legislative actions. Rapalje on Contempt, sec. 2; *State v. Matus*, 37 N. H. 400; Brown on Jurisdiction, p. 131; 120 Mass. Rep., p. 118; 26 Am. Rep. 49; 12 Am. Dec. 182. (6) Where public institutions or public officers are ordered to be investigated, it is to be presumed that it is with a view of some legislative action in regard to them. 99 N. Y. 464. (7) Punishment for contempt where authorized is punishment by "due process of law." 99 N. Y. 463. (8) Unless restrained by the state constitution or the constitution of the United States, the state legislature possesses the whole legislative power of the state, and may punish for contempt. No federal or state constitutional limitation intervenes in this case. 99 N. Y. 463.

GILL, J.—This is a proceeding in *habeas corpus*, whereby the petitioner Lowe seeks to be released from the custody of the respondent Summers, who, as sergeant at arms of, and by virtue of a warrant issued by, the house of representatives of the state of Missouri, had arrested said Lowe and was proceeding to take the petitioner before said house to answer the charge of an alleged contempt. The facts, as disclosed by the return, denial, etc., are substantially as follows: On January 15, 1897, the house of representatives, then in session, adopted certain resolutions reciting, in effect, the existence of grave charges against the police and election systems of Kansas City and St. Louis and especially against the board of police commissioners and chief of police of Kansas City, and declaring that, "whereas, the metropolitan police system and the election system of said cities exist by virtue of state laws, and it becomes the duty of this house to be thoroughly informed as to the actual operation of such laws, to the end that if defects therein exist the same should be corrected by adequate legislation ·thereon;" and thereupon said house resolved, "that a special committee of seven members of the house be appointed by the speaker of the house to investigate fully the charges made against the said police commissioners and chief of police of Kansas City as well as the methods that have been pursued in the operation of the police and election departments of said cities and any and all defects, if any, in the police and election laws of said cities, and report to this body the results of the investigation thereon, together with such amendments or modifications of the laws thereon as they may deem necessary. And be it further resolved, that this committee have full power to send for persons and papers; that it be empowered to go to any part of the

state, if deemed proper, to hold meetings and procure evidence," etc.

The committee thus provided for was duly appointed and it proceeded to Kansas City to investigate. Among other witnesses summoned before it was the petitioner Lowe, who was then, and is yet, the prosecuting attorney of Jackson county. He took the ordinary oath to testify; but when asked to state to the committee whether or not, and what, if any, corrupt propositions had been made to him by the Kansas City chief of police respecting the administration of the law, he, said Lowe, refused to answer. Interrogatories of this import were repeated in various forms, but the petitioner, then on the stand as a witness, declined to answer. Thereupon the committee returned to the capital, and by a written report, signed by its chairman, submitted in detail to the house the conduct of Mr. Lowe. The house then, on January 29, 1897, adopted a further resolution, reciting at length the resolutions giving rise to the appointment of the committee, the report of the committee as to Lowe's refusal to answer certain questions, and after declaring it the opinion of that body that such information sought was material to the investigation and that Lowe's conduct was an insult to the house and so intended, etc.; that Lowe ought to be compelled to answer or be punished for contempt, and that he be summoned to appear at the bar of the house to show cause, etc. A copy of these last resolutions were on February 2, 1897, served on Lowe and he was summoned in accordance therewith to appear before the house on February 8, 1897, to show cause why he should not be punished for contempt. But the said Lowe in like manner declined to obey said last order, and thereupon a warrant for his arrest was, by order of the house, issued, and the respondent Sum-

Lowe v. Summers.

mers, as sergeant at arms, proceeded to Kansas City and took said Lowe into custody.

I.  Concerning objections raised by the attorney general as to the matter of my jurisdiction in this proceeding I have little hesitancy in ruling them against his contention.  The Kansas City court of appeals is a court of record, and when this writ was applied for the court had adjourned for more than a day.  The court was therefore *in vacation.*  See last clause section 6570, Revised Statutes, 1889.  The *habeas corpus* statute intrusts the jurisdiction of such cases "to some court of record in term, or to any judge thereof in vacation."  Sec. 5346, R. S. 1889. · Unless, then, this statute is in conflict with some provision of the constitution this question of jurisdiction must be regarded as settled in the affirmative.  The constitution (sections 3 and 12, article 6) in general terms reposes jurisdiction of *habeas corpus* in the supreme court and the courts of appeals, and it has never been thought that this, by implication or otherwise, had the effect of denying jurisdiction to the *judges* of these courts in vacation.

*Courts of appeal: jurisdiction: habeas corpus.*

Neither do · I think that the jurisdiction here assumed is to be denied under the provisions of , section 5414, statute of *habeas corpus.*  That section provides that where the applicant for the writ shall be held "on a charge of crime or misdemeanor his application, in the first instance, shall be to the judge of the circuit court for the county in which the applicant is held in custody, if, at the time of the application, such judge be in the county" (except in St. Louis, etc.)  *  *  *  and upon every application of the kind aforesaid the applicant shall cause reasonable notice of the time and place of making the application to be given to the circuit or prosecuting attorney for the county in which

*contempt of general assembly.*

the application is to be made &ast; &ast; &ast; and upon such notice it shall be the duty of such attorney to attend upon the hearing of such application on behalf of the state." In this case it appears that when the writ of *habeas corpus* was applied for the judges of the Jackson circuit court were all in the county, and the contention is that the petitioner should, in the first instance, have applied to one of these; and that under the provisions of the foregoing statute, he was denied the right to sue out the writ before this court or a judge thereof. In my opinion the statute above quoted has no application to a case of the nature we have here. Mr. Lowe was not held under a "charge of crime or misdemeanor" in the ordinary acceptation of those terms. While the prosecution for contempt may be said to resemble that of a criminal nature, I yet think the purpose of the foregoing section was to reach only that character of cases wherein the *state* is a party. That seems clearly to have been the intention of the legislature; for in addition to the use of the words "crime and misdemeanor," the statute directs the prosecuting attorney to appear before the court *"in behalf of the state."*

II. This matter then of jurisdiction being disposed of, let us proceed to consider the legality of Mr. Lowe's arrest and detention. Counsel in his behalf have in brief and argument urged with much force and ability that the house of representatives has no jurisdiction or power to punish a contumacious witness called to testify before one of its committees charged with an investigation. In arriving at a correct conclusion of this point, it becomes necessary first to settle on the existence or nonexistence of this power at common law, and then consider what effect or change has been wrought by our state constitution.

This general power to punish for contempt has resided with the legislative bodies of England for time immemorial. But in this country the jurisdiction of legislative bodies has not been conceded

GENERAL assembly: power to punish for contempt: common law: American law.

of so wide a range and so comprehensive as under the English law. The reasons for these limitations are fully discussed and explained in the noted case of *Kilbourn v. Thompson*, 103 U. S. 168. The existence of this very extensive power in the English parliament had for its basis the enlarged judicial functions exercised by that body. Before its separation into two bodies, since known as the house of lords and house of commons, the English parliament was the highest court of judicature of the kingdom, and it had therefore full power and authority to try and punish contempts which in any way infringed its prerogative And after the division into two bodies such extensive jurisdiction to punish for contempt was by common consent continued. In this country, however, there has been a diligent effort to separate as completely as may be the different functions of government, to distribute the powers—legislative, judicial and executive— and entrust the same to the keeping and administration of distinctive persons or bodies. Hence the tendency to deny legislative bodies the exercise of any function strictly and simply judicial. It has been found, however, impracticable, if not impossible, always to observe and enforce the strict limit of these respective powers; they become in many cases necessarily blended. For example, the legislative body is the judge of the election and qualification of its own members, may try and expel its own members, and may, too, preserve order at its own sessions, and to that end of course must try and determine the facts and pass judgment thereon. These duties are to an extent

judicial; and hence I say it is not always practical or possible to entirely divorce the legislative from the judicial function; the concurrent exercise of both by the same body is often essential if not indispensable.

Notwithstanding now it must be conceded that the English houses of parliament may transcend the limits of punishing for contempt that are found in this country, yet, from a rather extensive and careful examination, I find it asserted and 'uniformly conceded as a common law principle, that not only may the legislative body inflict punishment on its members who may be guilty of a contempt, but it may impose like penalties on other persons who may commit disorder in the presence of such body or who may ignore or treat with contempt its lawful process, or be guilty of such other acts before the house or its committee as will tend directly and necessarily to defeat, embarrass or obstruct its proceedings. This is a power inherent in the houses or bodies composing the legislative branch, and for the exercise thereof no express constitutional provision is required; such power exists whether so conferred or not. Cooley's Const. Lim. [6 Ed.], 158; Black's Const. Law, 264; Rapalje on Contempts, sec. 2; *People ex rel. McDonald v. Keeler*, 99 N. Y. 463; *In re Falvey v. Massing*, 7 Wis. 630; *Burnham v. Morrissey*, 14 Gray, 226; *Anderson v. Dunn*, 6 Wheat. (U. S.) 204.

As pithily expressed by Judge COOLEY in his work on constitutional limitations at page 160, and after conceding, as the learned author does, that American legislative bodies have not the comprehensive powers in this regard as is exercised by the English houses, "but," he says, "as incidental to their legislative authority, they have the power to punish as contempts those acts of members or others which tend to obstruct the performance of legislative duty, or to defeat, impede

or embarrass the exercise of legislative power.    *    *    *
Each house must also be allowed to proceed in its own
way in the collection of such information as may seem
important to a proper discharge of its functions; and
whenever it is deemed desirable that witnesses should
be examined, the power and authority to do so is very
properly referred to a committee, with any such pow-
ers short of final legislative or judicial action as may
seem necessary or expedient in the particular case.
*    *    *    A refusal to appear or to testify before such
committee, or to produce books or papers, would be a
contempt of the house; but the committee can not
punish for contempts; it can only report the conduct
of the offending party to the house for its action."
The cases above cited from 14 Gray, 7 Wis. and 99
N. Y. support the text just quoted, and to save space
I must content myself with a mere reference.

In view then of the foregoing authorities and the
reasoning of the eminent judges there detailed, I feel
secure in the position that, under the common law
alone, or even in the light of the constitutional provi-
sions generally prevailing in the states, either house of
the general assembly has the inherent right and power
to punish as for a contempt an obstinate and refusing
witness; and this, too, whether summoned before the
house proper or before one of its committees author-
ized to investigate a matter pertaining or germane to
the legislative duties of the house.

III.    The next question is, has this power, as it
existed under the parliamentary common law of the
land, been taken away by our state constitution. The
learned counsel for petitioner have treated this feature
of the case under two heads: *First*, that under the
——: ——: distri- constitution the powers of the government
bution of powers. are divided into three distinct depart-
ments—the legislative, executive and judicial; that

these different departments are confided to a separate magistracy with an express prohibition that neither department shall encroach on the powers or duties of another, etc.; that the matter of contempt and the meting out punishment therefor is judicial in its nature and therefore beyond the jurisdiction of the legislative body. And, *secondly*, it is contended, since section 17, article 4, has expressly stipulated that the house "may arrest and punish by fine not exceeding three hundred dollars, or imprisonment in a county jail not exceeding ten days, or both, any person not a member, who shall be guilty of disrespect to the house by any disorderly or contemptuous behavior *in its presence* during its sessions," that this express statement in the constitution providing for the punishment of parties other than members, who should be guilty of contempt in *presence of the house* is an implied negation of the power to punish contempts *not in presence of the house.*

The first of these objections is disposed of by the former paragraph of this opinion and the authorities there cited. The matter contained in article 3 of our constitution is in substance the same as that found in most if not all the states of the Union, and the authorities before cited therefore apply as well here as in the states where such opinions were rendered. The power to enforce order and decorum before and toward a legislative body, so as to insure the proper and efficient transaction of its constitutional duties, does not come under the head of "power properly belonging" to the *judicial* department, but is more accurately classed as a "power properly belonging," incident to, and inherent in the *legislative* body.

In my opinion, too, the second objection—to wit, that by section 17, article 4, of the constitution all

—: —: con-
stitutional
limitation.
power is impliedly taken from the house to punish for contempt save only that committed in its actual presence—is even less tenable than that just noticed. The contention is based on the well known maxim of construction, "*expressio unius, exclusio alterius.*" But counsel forget that "what is expressed is exclusive only when it is *creative*, or in derogation of some existing law, or of some provisions in the particular act. The maxim is applicable to a statutory (or constitutional) provision which grants *originally* a power or right. In such cases the power or right originates with the statute (or constitution) and exists only to the extent plainly granted." Sutherland on Stat. Const., sec. 325. As already explained, the power of a legislative body to enforce its lawful orders and punish for contempts whether committed in or out of its presence, existed by the common parliamentary law at the time and long before the adoption of the above quoted constitutional provision.

It did not, therefore, *create* the power. Such power already existed, and the only effect of that constitutional provision was to fix and limit the mode and duration of punishment to a contempt committed by an outside party in its presence. Prior to the adoption of said constitutional provision the imprisonment by the house was by the common law and parliamentary usage limited to the duration of the session, but this section modified the then existing law to the extent only of definitely fixing the punishment in the one matter of contempt committed in its presence; and this was all it accomplished. The constitution should be read and construed along with and in the light of the common law existing at the time, and it will be construed as modifying or changing the common law to the extent only that it is plainly incon-

sistent therewith. "We are to keep in mind that it (the constitution) is not the *beginning* of law for the state, but that it assumes the existence of a well understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes." Cooley, Const. Lim. [6 Ed.], 75. In the language of Judge DENIO, *People v. Draper*, 15 N. Y. 537, "we must keep in mind that the constitution was not framed for a people entering into a political society for the first time, but for a community already organized and furnished with legal and political institutions adapted to all, or nearly all, the purposes of civil government, and that it was not intended to abolish these institutions, except so far as they were repugnant to the constitution then framed." Judge HOAR of the supreme court of Massachusetts while discussing similar coustitutional provisions, but even more elaborately than we have here, uses language which I shall quote in concluding this branch of the case:

"We consider the object of these provisions to have been twofold: *First.* To extend the power beyond the limit which it had by common parliamentary law and custom, by authorizing the imposition of a sentence of imprisonment for a definite period, which should not be terminated by the ending of the session of the house; and, *second*, to limit the power of punishing for constructive contempts, by expressly defining the cases in which it might be exercised. *But we do not consider it as affecting the power of the house to secure by proper means the free and full performance of all its constitutional duties, and to exercise whatever powers are necessary to that end.*

"The house of representatives has many duties to perform, which necessarily require it to receive evidence, and examine witnesses. It is the grand inquest

for the commonwealth, and as such has power to inquire into the official conduct of all officers of the commonwealth, in order to impeachment. It may inquire into the doings of corporations, which are subject to the control of the legislature, with a view to modify or repeal their charters. It is the judge of the election and qualification of its members It has power to decide upon the expulsion of its members. *It has often occasion to acquire a certain knowledge of facts, in order to the proper performance of legislative duties.*

"We, therefore, think it clear that it has the constitutional right to take evidence, to summon witnesses, and to compel them to attend and to testify. This power to summon and examine witnesses it may exercise by means of committees.

"If a witness, duly notified or summoned, by the authority of the house, to attend before a committee; or before the house, refuses to attend, or, when present, and required to testify, or to do any other act which a witness may be lawfully required to do, refuses to obey the lawful commands of the house in that behalf, it is a contempt of the authority of the house; and, upon such refusal to attend, or if such refusal to testify occur before a committee, the house may compel his obedience by arresting him by the proper officer of the house, and bringing him before the house."

· In keeping with this power, which, it seems to me, is vested in the legislative body, our statute, section 6656, provides: "If any person, whether a member or not, shall disturb the proceedings of any committee of either house, or be guilty of disorder in their presence, the house appointing such committee may punish such person as if the like offense were committed in the presence of such house." The refusal of a witness sum-

moned before the committee to answer proper questions is clearly *"disorder in their presence,"* and constitutes such conduct as tends to "disturb the proceedings."

Admitting now, as I feel we must, that the house of representatives has jurisdiction and power to punish for contempt—whether it be *direct* as provided in the single instance named in the constitution, or *constructive* as authorized at common law—it can not be successfully denied that petitioner Lowe has so conducted himself as to warrant the exercise of that power by the house. At all events, when summoned it was his duty to appear before the bar of the house, answer the alleged contempt, and show cause why he had refused to testify. There is nothing here shown to justify that refusal. The resolutions under which the committee was acting, and which constituted its commission, disclosed a proper and lawful object, to wit, to investigate the operation of the police laws at Kansas City, as well as the conduct of the officers in discharge of duties relating thereto, and report to the house "the results of the investigation thereon, together with such amendments or modifications of the laws thereon as they may deem necessary."

The mere fact that at the time he was called to testify before the committee petitioner Lowe was prosecuting attorney, can under no possible view of the case, be treated as an excuse for his contumacious behavior. If when subsequently summoned before the house his official duties were such as rendered it quite impossible to attend or so damaging to the public service that obedience in the one case would amount to a dereliction of duty in the other, then it was proper to submit the causes of delinquency to the house and ask for further time or that he be excused altogether from

*—: —: conflicting duty of public officer.*

answering the charges.   But in ignoring this order of the house he was guilty of a second contempt.

There is nothing in the case made here that justifies the suggestion that the investigation was a mere pretense or instituted "for political purposes, not connected with intended legislation" or "to vindicate somebody."   The questions asked, and which the petitioner refused to answer, were apparently proper and germane to the objects of the investigation as set out and declared in the original resolutions adopted by the house.

IV.   Petitioner's counsel make the technical point in their brief that before a warrant can be issued for constructive contempt there must be filed an affidavit charging such contempt.   I think there is no merit in this contention.

——: ——: affidavit charging contempt.

In proceedings before an ordinary court of record to punish one charged with contempt committed out of its presence, the usual practice undoubtedly is to require an affidavit of some one who witnessed the act.   But in proceedings before legislative bodies it would seem a report signed by the committee or its chairman who has knowledge of the fact ought to be sufficient.   The sole purpose is to inform the offended body of the acts constituting the contempt.   This is well performed by a written report signed by a sworn officer and member of the body.   "It has been held that an officer's return of process is sufficient to inform the court."   Rapalje on Contempts, sec. 93.

After a patient and careful consideration of this matter in all its bearings, I have concluded that the house of representatives has the inherent power and authority to punish for contempt of its proceedings, and that too whether the same be committed in its presence or before one of its committees while engaged in the investigation of matters within the scope of leg-

islative duties belonging to the house; that this juris-
diction and authority is vested by the common law and
has not been abrogated by the constitution or statute
law of this state; that petitioner Lowe was, as shown
by the record, guilty of such conduct as tended to
embarrass and obstruct the house while pursuing a
legitimate inquiry, and was therefore in contempt, and
that the proceedings by the house to enforce obedience
to its mandates and looking to the punishment of the
recusant witness, were sufficiently regular.

The petitioner will therefore be remanded to the
custody of the sergeant at arms.

The foregoing opinion has been submitted to my
associates, Judges SMITH and ELLISON, and I am
authorized to say that they concur in the views therein
expressed.